Virgil LONG, et al., Plaintiffs,

v.

Michael J. GAINES, et al., Defendants.

No. CIV. A. 01–0010 (EGS).

United States District Court,
District of Columbia.

Sept. 26, 2001.

---

Laura L. Rose, D.C. Public Defender Service, Douglas W. Baruch, Steven Clifford Parker, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for Plaintiffs.

Michael Anthony Humphrey, U.S. Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

### Introduction

The United States Parole Commission ("Commission") assumed the powers, duties and jurisdiction of the District of Columbia Board of Parole on August 5, 2000, pursuant to the National Capital Revitalization and Self–Government Improvement Act of 1997, Pub.L. No. 105–33, § 11231(a)(2), 111 Stat. 712, 745 ("Revitalization Act"). The Commission's new responsibilities included the authority to revoke parole and to modify the conditions of parole for D.C.Code offenders. The Commission replaced the parole revocation procedures used by the D.C. Board of Parole with new parole regulations. The plaintiffs, a class of D.C.Code offenders released on parole supervision, filed this suit alleging that the Commission's new regulations, on their face and as applied, fail to provide the due process required by the Fifth Amendment of the U.S. Constitution. Plaintiffs' claim that hundreds of alleged parole violators have been arrested and kept in custody for months, while the Commission has failed to provide due process through timely and adequate probable cause determinations and revocation hearings, has been substantiated by the evidence presented to this Court. Today, over a year after the Commission assumed the duties of the D.C. Board of Parole, many of the problems continue.

The alarming state of affairs at the Commission is clear to the Court, not only from the evidence submitted by the plaintiffs in this case, but from the Commission's own proposed findings of fact and conclusions of law, submitted to the Court on June 12, 2001. The Commission admits that "[p]rior to August 5, 2000, the Commission was already struggling with existing backlogs in its parole cases" and that "it seriously underestimated the problems it would encounter or the staff it would need." Defendants' Findings of Fact ¶ 3. "As of August 5, 2000, the Commission did not have the personnel it needed to carry out the District of Columbia parole revocation function in compliance with the Revitalization Act, the Trustee's certification, the requirements of due process, and the time deadlines established in the procedural regulations which the Commission published on July 26, 2000 (effective August 5, 2000)." *Id.* at ¶ 2.

While the Commission claims that it attempted to establish the necessary administrative mechanisms for processing parole violators, it admits that "these preparations did not prove sufficient to address the serious difficulties that would arise. . . ." *Id.* at ¶ 3. The Commission admits that it was "overwhelmed by the number of District of Columbia Code parolees who were arrested on warrants issued by

the now abolished D.C. Board of Parole and by the Commission." *Id.* at ¶ 5.

The problems that the Commission faced were predictable. On June 21, 2000, Attorney General Janet Reno warned Congress that "if the Commission were not able to handle its caseloads, the result would '. . . include a flood of related prison litigation that could overwhelm not only the Commission's physical and legal resources, but those of the Bureau [of Prisons], United States Attorneys and District of Columbia as well." *Id.* at ¶ 4.

When the Commission took over, there were over 200 parolees arrested on warrants issued by the D.C. Board of Parole. *See id.* at ¶ 5. "The 'vast majority' of these arrested parolees were already overdue for revocation hearings, with delays extending from 60 days to 1 year." *Id.* Despite the existing backlog, D.C. parolees began to be arrested on existing warrants at a rate higher than the previous rate. *See id.*

The Commission candidly acknowledges that "the Commission was unable to process this influx of arrested parolees to final revocation hearings within the time frames established by its rules." The Commission has conceded that the situation amounted to a near breakdown in the revocation process for D.C.Code offenders, with a backlog of cases in October of 2000 of more than 400 arrested parolees awaiting revocation hearings. *See id.* at ¶ 6. In November of 2000, the Commission released 116 arrested parolees without hearings in an effort to reduce the backlog, but nonetheless, "delays of four months from arrest to the final revocation decision continued to be common . . . with some hearings delayed six months or more." *Id.* at ¶ 7. The Commission found itself "unable to provide preliminary interviews in a timely manner," and unable to determine when warrants were executed, or which

parolees were awaiting hearings. Additionally, the Commission admits that the documentary evidence needed to make findings as to probable cause and as to revocation of parole was often missing for those parolees arrested on violator warrants and in the Commission's custody. *See id.* at ¶ 8. The Commission concedes that "[t]he extensive delays experienced by the five named plaintiffs, prior to receiving their parole revocation hearings and decisions, were typical of the delays experienced by many parolees" and that "[d]elays continue to occur in many cases. . . ." *Id.* at ¶ 16.

While the Commission may have ameliorated some of the problems it faced last fall, the Commission remains unable to comply with its regulations. The Commission remains "unable to comply with its regulation requiring final determinations as to revocation within 21 days of the revocation hearing, excluding weekends and holidays, as required by 28 C.F.R. § 2.105(c). Approximately 90 percent of the Commission's cases do not meet this deadline." *Id.* at ¶ 13. Moreover, the ability of the Commission to maintain the improvements it has made long term is questionable. The Commission relies upon "significant voluntary contributions of unpaid overtime from the Commission's civil service staff that processes its cases." *Id.* at ¶ 15. "These 'unpaid, gratuitous hours' are necessary for the Commission to 'maintain function.'" *Id.* The ommission concedes that these "improvements are not sustainable for the long-term. . . ." *Id.* The Commission has requested, and hopes to receive, additional funding from Congress, but admits that "there is no basis for the Court to determine whether Congress will grant the . . . appropriation request. . . ." *Id.*

The Commission further admits that it "is constitutionally obligated to resolve the

current problem of repeated unconstitutional delays in the most efficient and expedient manner possible." Defendants' Conclusions of Law ¶ 9. To bring its practices in conformity with the Constitution, the Commission states that either: (1) it must obtain "from Congress an appropriation sufficient for the Commission to hire such additional personnel as will enable the Commission to meet its time deadlines and satisfy due process; or (2) in the absence of an adequate Congressional appropriation, to take such measures, including but not limited to a revision of its revocation regulations, in consultation with the Attorney general and other interested agencies, to resolve the problem within the reasonable period of time." *Id.* at ¶ 10. Thus far, neither of these has happened.

It is in this context that plaintiffs, D.C.Code offenders released from custody on parole supervision, commenced this class action lawsuit seeking injunctive relief from certain regulations, practices, and procedures of the Commission. Plaintiffs allege that the Commission's regulations, on their face and as applied, systematically violate the constitutional rights of D.C. parolees. Specifically, plaintiffs claim the Commission's regulations, codified in 28 C.F.R. § 2.70, *et seq.,* fail to provide parolees with either a prompt determination of probable cause or a timely final revocation decision. Plaintiffs further allege that in practice, individuals are subjected to even greater delays than allowed under the already deficient regulations. Accordingly, plaintiffs seek injunctive relief from the Commission's regulations, practices and procedures on the grounds that the Commission's actions violate the Fifth Amendment of the United States Constitution.

Pending before the Court are plaintiffs' motions for class certification and summary judgment and defendants' motions to dismiss and summary judgment. Since the plaintiffs have fulfilled all the requirements to justify class certification of this action, the Court **GRANTS** plaintiffs' motion for class certification.

Plaintiffs' motion for summary judgment rests on the following three grounds: 1) the Commission's regulations, as written, are unconstitutional as a matter of law, 2) the Commission has failed to comply with those regulations, resulting in even more egregious unconstitutional delays, and 3) the Commission's practices constitute a policy and custom of constitutional violations sufficient to justify injunctive relief. Defendants' motion to dismiss presents three arguments: 1) an action in habeas corpus is plaintiffs' sole course of action, 2) plaintiffs' claims are without merit, and 3) the relief plaintiffs request would violate the separation of powers doctrine.

The Court hereby concludes that the Commission's regulations relating to the timing of probable cause determinations and final revocation hearings are in violation of the principles of due process, both on their face and as applied, and that the evidence demonstrates a sufficient pervasive pattern of constitutional violations to justify injunctive relief. Since the defendants' contentions are refuted by both the law and the evidence, the Court **DENIES** defendants' motion to dismiss. In addition, the Court **GRANTS** plaintiffs' motion for summary judgment and **DENIES** defendants' cross-motion for summary judgment as moot.

### *Factual Background*

The Commission assumed authority over all District of Columbia parole matters on August 5, 2000, pursuant to the Revitalization Act. *See* Pub.L. 105–33, 111 Stat. 712 (1997). This Act vested the Commission with those responsibilities formerly held by the Board of Parole of the District of Columbia, including the power to both re-

voke and modify the conditions of parole of all persons convicted of felonies in the District of Columbia and later released on parole. *Id.* Pursuant to this authority, the Commission adopted new regulations regarding its procedures for handling the disposition of alleged parole violations. 28 C.F.R. § 2.70 *et seq.*

At the time the Commission assumed responsibility for D.C. parole matters, the Commission inherited a large backlog of cases. Immediately, the Commission found that its resources were "overwhelmed", and operations "reached a state of near collapse." 7/16/01 Tr. at 101 (statement of defense counsel Michael Stover: "Following the transition on August 5 of 2000, the Parole Commission was hit with a huge backlog of cases, 230 cases, waiting in custody for hearings. It overwhelmed our resources. We reached a state of near collapse."). In October 2000, "the Commission [still] had a backlog of over 240 arrested parolees who were beyond the constitutional deadline established by the U.S. Supreme Court in *Morrissey v. Brewster.*" 7/17/01 Tr. at 49 (discussing the Commission's report to the Bush Administration). Indeed, in the months following its assumption of responsibility, the backlog increased. *See* 7/17/01 Tr. at 50.

The Commission admits that it continues to face a "litany of issues" including, "over 200 overdue revocation hearings; over 100 backlogged and overdue arrest warrants; and, over 300 late initial and re-hearings." 7/17/01 Tr. at 51 (discussing the Commission's statements to Congress in its March 29, 2001 budget request). Ultimately, if the current state of affairs is allowed to continue "the crisis will continue to worsen. Once again the Commission will be in the unenviable position of either having to release offenders for whom constitutionally required revocation hearings cannot be timely conducted, or leaving it to the U.S. District Court to issue writs of habeas corpus to remedy noncompliance with its orders." United States Parole Commission Report of January 4, 2001. It is within this framework that the defendants themselves have admitted, "the defendants recognize that plaintiffs have a good case for some appropriate relief." Def's Cross–Mot. For Sum. Judg. at 37.

### The U.S. Parole Commission Regulations At Issue

The Commission enacted the following, presently challenged, regulations in order to govern the parole revocation process:

- 28 C.F.R. § 2.98(a)(2): If a parolee is alleged to have violated the conditions of his release, and satisfactory evidence thereof is presented, the Commission...may issue a warrant for the apprehension and return of the offender to custody.

- 28 C.F.R. § 2.101(a): A parolee who is retaken on a warrant issued by the Commission shall promptly be offered a preliminary interview... The purpose of the preliminary interview is to determine if there is probable cause to believe that the parolee has violated his parole as charged.

- 28 C.F.R. § 2.101(d): At the conclusion of the preliminary interview, the interviewing officer shall inform the parolee of his recommended decision as to whether there is probable cause to believe that the parolee has violated the conditions of his release, and shall submit to the Commission a digest of the interview together with the recommended decision.

- 28 C.F.R. § 2.101(d)(2): If the interviewing officer's recommended decision is that there is probable cause to believe that the parolee has violated a condition (or conditions) of his release,

the Commissioner shall notify the parolee of the final decision concerning probable cause within 21 days of the date of the preliminary interview.

- 28 C.F.R. § 2.102(f): A local revocation hearing shall be scheduled to be held within sixty days of the probable cause determination. Institutional revocation hearings shall be scheduled to be held within ninety days of the date of the execution of the violator warrant upon which the parolee was retaken.

- 28 C.F.R. § 2.103(a): The purpose of the revocation hearing shall be to determine whether the parolee has violated the conditions of his release and, if so, whether his parole or mandatory release should be revoked or reinstated.

- 28 C.F.R. § 2.103(d): All evidence upon which the finding of violation may be based shall be disclosed to the alleged violator at or before the hearing. The hearing officer or examiner panel may disclose documentary evidence by permitting the alleged violator to examine the document during the hearing, or where appropriate, by reading or summarizing the document in the presence of the alleged violator.

- 28 C.F.R. § 2.105(c): The Commission's [final revocation] decision shall ordinarily be issued within 21 days of the hearing, excluding weekends and holidays.

### Discussion

## I. Defendants' Motion to Dismiss

The defendants' motion to dismiss is primarily based on the following three grounds: 1) the plaintiffs are precluded from bringing this action except under habeas corpus, 2) the plaintiffs' complaint fails to state a claim upon which relief may be granted, and 3) the relief requested by plaintiffs would violate the separation of powers doctrine.

### A. Standard of Review

A complaint "should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). The claimant need not set out in detail the facts upon which the claim is based; to the contrary, all that is required is a short and plain statement of the claim that will give the defendant fair notice of what the claim is and the grounds upon which it rests. *See Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C.Cir.2000). Furthermore, the Court must draw all reasonable inferences in the light most favorable to the non-moving party, and accept as true all well-pleaded allegations of fact. *See Pitney Bowes, Inc. v. U.S.P.S.,* 27 F.Supp.2d 15, 19 (D.D.C. 1998).

### B. Section 1983 Action

██ Defendants argue that plaintiffs' complaint should be dismissed because their claims may only be brought in a habeas proceeding. "A district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody...on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In support of their argument, defendants rely on this Circuit's decision in *Chatman–Bey v. Thornburgh,* 864 F.2d 804 (D.C.Cir.1988). In that case, the Court held that federal prisoners challenging the fact or duration of their imprisonment may only seek relief via a habeas corpus action. 864 F.2d at 809. In the

present case, defendants argue that since plaintiffs are challenging the fact and duration of their imprisonment, plaintiffs claims must therefore be dismissed for failure to state a claim upon which relief may be granted.

The Supreme Court has recognized that certain claims by a prisoner may be cognizable under 42 U.S.C. § 1983. In *Edwards v. Balisok*, the Court held that a prisoner's challenge to a prison disciplinary hearing was properly brought as a § 1983 claim. 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). Essential to this decision, the Court noted that the plaintiff had not challenged the fact or duration of his confinement, but rather, solely contested the conditions of his imprisonment. This reasoning was recently followed by the D.C. Circuit in *Anyanwutaku v. Moore*, 151 F.3d 1053 (D.C.Cir. 1998). In *Anyanwutaku*, the plaintiff, a D.C. prisoner, challenged the Department of Corrections' calculation of his parole eligibility date under § 1983. 151 F.3d at 1055. The Circuit Court held that the plaintiff's claim was properly brought under § 1983 since parole in D.C. is entirely discretionary, and as such, a favorable decision would not "necessarily imply or automatically result in a speedier release from prison." 151 F.3d at 1056. *See also Gwin v. Snow*, 870 F.2d 616, 624–25 (11th Cir.1989); *Serio v. Members of La. State Bd. Of Pardons*, 821 F.2d 1112, 1119 (5th Cir.1987); *Georgevich v. Strauss*, 772 F.2d 1078, 1087 (3rd Cir.1985) (*en banc*); *Walker v. Prisoner Rev. Bd.*, 694 F.2d 499, 501 (7th Cir.1982).

The issues raised in the present case are analogous to those presented in *Anyanwutaku*, 151 F.3d 1053. Plaintiffs' claims are restricted to challenging the Commission's regulations and procedures, and not the fact nor the duration of plaintiffs' confinement. In other words, plaintiffs' challenge will not be dispositive in effectuating plaintiffs' release; a decision finding the Commission's procedures unconstitutional will not necessitate an earlier release of any of the plaintiffs, but will simply ensure the constitutional resolution of the plaintiffs' parole revocation process. Therefore, the Court concludes that plaintiffs' claims are properly presented under 42 U.S.C. § 1983.

## C. Plaintiffs Do Not Fail to State a Claim

■ Defendants further contend that plaintiffs' claims should be dismissed for lack of merit. Specifically, defendants argue that their regulations provide findings of probable cause and revocation hearings within those time periods required by the Constitution. Thus, defendants contend that plaintiffs' claims should be dismissed as a matter of law. *See Best v. Kelly*, 39 F.3d 328, 330 (D.C.Cir.1994).

Plaintiffs' allegations that the Commission's regulations, as written and as applied, fail to provide prompt findings of probable cause or timely revocation hearings, clearly state a claim upon which relief may be granted. The Supreme Court in *Morrissey v. Brewer* Court held that parolees retain a liberty interest in their freedom, and that such an interest requires that a determination of probable cause be made promptly after the arrest of a parolee. 408 U.S. 471, 484–86, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). This requirement was further defined by the Court's decision in *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In *County of Riverside*, the Supreme Court held that arrestees, whose suit under § 1983 alleged that the county had failed to provide prompt determinations of probable cause and thus had violated due process, were entitled to such a finding within 48 hours of arrest.

500 U.S. at 45, 111 S.Ct. 1661. The Court noted that it had previously established in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), that the determination must be made promptly, and defined promptly as a decision made within 48 hours. 500 U.S. at 45, 111 S.Ct. 1661.

The Supreme Court has also established that a parolee is entitled to a final parole revocation hearing within a reasonable time from the date of arrest. *See Morrissey*, 408 U.S. at 488, 92 S.Ct. 2593. While the Court was unwilling to define the parameters of what constitutes a "reasonable time," it held that a revocation hearing held sixty days from the date of arrest would not be unreasonable. 408 U.S. at 488, 92 S.Ct. 2593. Thus, the Court established that a parolees' constitutional rights extend to both a prompt determination of probable cause and a revocation hearing held within a reasonable period of time.

In the present case, plaintiffs contend that neither the Commissions' rules nor practices provide the due process outlined in *Morrissey* and its progeny. Since the Supreme Court has established that parolees retain a liberty interest in their freedom, and that parolees are entitled to both a prompt finding of probable cause and a final revocation hearing within a reasonable time, plaintiffs' complaint states a claim upon which relief may be granted.

### D. Plaintiffs' Requested Relief Does Not Violate the Separation of Powers Doctrine

Defendants' final argument is that the injunctive relief sought by plaintiffs would violate the doctrine of separation of powers. This argument is devoid of merit. In *Rizzo v. Goode*, 423 U.S. 362, 379–80, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Supreme Court held that injunctive relief is appropriate where plaintiffs can demonstrate a pervasive pattern of violations flowing from a deliberate plan of the named defendants. *See also Ellis v. District of Columbia*, 84 F.3d 1413, 1424 (D.C.Cir.1996) ("Injunctive relief is warranted in this type of § 1983 action only if there is 'a pervasive pattern...flowing from a deliberate plan by named defendants' "); *Wash. Mobilization Comm. v. Cullinane*, 566 F.2d 107, 122 (D.C.Cir. 1977) (requiring plaintiffs show that defendant "directed, authorized or approved" the allegedly unconstitutional conduct). In view of the foregoing reasons, plaintiffs have clearly brought such a claim.

Accordingly, defendants' motion to dismiss is **DENIED**.

### II. Plaintiffs' Motion for Class Certification

Plaintiffs seek to certify a class of approximately 400 D.C.Code offenders in order to challenge the Commission's regulations governing parole revocation procedures. Under Fed.R.Civ.P. 23(a), in order for a class to be certified, plaintiffs must satisfy four criteria: 1) joinder of all members must be impractical, 2) questions of law or fact must be common to all members of the class, 3) the representative parties must be typical members of the class, and 4) the representatives must fairly represent the interests of the class. *See, e.g., General Tel. Co. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Furthermore, plaintiffs must show that the class falls within the requirement of Fed.R.Civ.P. 23(b)(2), that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

In opposition to plaintiffs' motion for class certification defendants rely upon their motion to dismiss, contending that

because plaintiffs have failed to bring a justiciable claim under habeas corpus, the case should be dismissed. Hence, defendants claim, there is in fact no common issue properly before the Court under which a class may be certified.

Defendants' contention that the plaintiffs' claim must be dismissed because it was not brought as a habeas action is unpersuasive. As outlined above, it is clear that plaintiffs' action under § 1983 properly presents a claim upon which relief may be granted. For this reason, defendants' motion to dismiss has been denied, and as such, the core of defendants' opposition to class certification is moot.

The evidence in support of class certification being persuasive, the Court hereby concludes that plaintiffs have demonstrated sufficient numerosity, commonality, typicality, and adequacy to merit class certification. Additionally, the Court is convinced that this action fits within the parameters of Fed.R.Civ.P. 23(b)(2). Accordingly, plaintiffs' motion for class certification is hereby **GRANTED.**

### III. Plaintiffs' Motion for Summary Judgment

Plaintiffs' motion for summary judgment advances three principal arguments: 1) the Commission's regulations at issue are unconstitutional and violate due process as a matter of law, 2) the evidence presented, including defendants' own admissions and testimony, clearly demonstrates that the Commission's non-compliance with its regulations is causing further unconstitutional violations of due process, and 3) defendants' practices constitute a policy and custom of constitutional violations sufficient to justify injunctive relief.

Plaintiffs claim that the Commission's regulations are facially unconstitutional. The regulations at issue govern the Commission's procedures, both pre- and post-arrest, for determining whether probable cause exists to support parole revocation. In addition, plaintiffs' complaint also facially challenges the Commission's regulations governing the Commission's timing of final parole revocation hearings. Finally, plaintiffs claim that the Commission's regulations regarding parolees' right to discovery of the evidence to be used against them are also unconstitutional on their face, since they deprive parolees of their right to due process.

Plaintiffs also claim that the Commission's regulations are unconstitutional as applied. They contend that the evidence overwhelmingly shows that the Commission has been unwilling or unable to meet the deadlines prescribed by its own regulations, and that these failures have resulted in additional delays in the parole revocation process. Plaintiffs contend that these additional delays are in violation of parolees' constitutional rights. Finally, plaintiffs' complaint alleges that the pervasive and continuing nature of these violations is sufficient to merit injunctive relief.

#### A. Standard of Review

Summary judgment should be granted pursuant to Federal Rule of Civil Procedure 56 only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 879 (D.C.Cir.), *reh'g en banc granted,* 124 F.3d 1302 (1997). In ruling upon cross-motions for summary judgment, the Court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Rhoads v. McFerran,* 517 F.2d 66, 67 (2d Cir.1975).

## B. Constitutionality of the Commission's Regulations Governing the Determination of Probable Cause

Plaintiffs claim that the Commission's regulations violate due process. The Commission's procedures, governed by 28 C.F.R. § 2.98, and § 2.101, provide for a multifaceted determination of probable cause. First, before a parole violation warrant is issued, the regulations require that the Commission find that "satisfactory evidence" exists that the parolee has committed the alleged parole violation. The Commission's handbook specifically states that the satisfactory evidence requirement is "less stringent than the probable cause standard." United States Parole Commission Rules & Proc. Man. at 211. However, Michael Stover, the Commission's General counsel, when presented with this precise issue, stated to the Court that the satisfactory evidence standard is the same as that of probable cause. "I think that it is absolutely clear that as we have defined satisfactory evidence, and in fact the Chairman said so in a published regulation, that the two are equivalent." Statement of Michael Stover, 7/16/01 Tr. at 83. It is troubling to the Court that the Commission's interpretation of this standard is directly contrary to the explanation provided in the Commission's own handbook.

In addition to this initial determination of satisfactory evidence, the Commission's regulations call for a more comprehensive determination of probable cause. Following the execution of a revocation warrant based on probable cause, the Commission's regulations entitle parolees to a preliminary interview. The purpose of this interview, according to the regulations, is to "determine if there is probable cause to believe that the parolee has violated his parole as charged." 28 C.F.R. § 2.101(a). In the words of the Commission, the interview, "gives the parolee a chance to rebut the finding, rebut satisfactory evidence." Statement of Michael Stover 7/16/01 Tr. at 84. At the conclusion of this interview, the regulations call for the interviewing officer to submit to the Commission a digest of the hearing and a recommendation regarding the existence of probable cause. Though the evidence suggests that this recommendation is granted extreme deference, the regulations finally call for a *de novo* review of the record by the Commissioners, resulting in a final probable cause decision.[1] This final decision, based upon all the compiled evidence, is due within 21 days of the preliminary interview. Plaintiffs challenge the constitutionality of this process.

The Fifth and Fourteenth Amendments'[2] due process clauses serve to protect individuals' liberty interests from government intrusion. In *Morrissey*, the Supreme Court established that despite their limited rights, parolees retain a liberty interest in their freedom. 408 U.S. at 482, 92 S.Ct. 2593. Given this interest, the Court held that probable cause deci-

---

1. The evidence presented to the Court shows that the recommendation of the preliminary interviewer is granted extreme weight: Q. "So you have never reversed an interviewer's recommendation or analyst's recommendation with request to supporting a finding of probable cause?" A. "Not in a D.C. case" Dep. Testimony of Michael J. Gaines, 5/11/01 at 46. Q. "On occasion does a commissioner determine that there is no probable cause?" A. "I cannot speak for other members. I've not made a finding that there is not probable cause on any cases that have been presented to me." Dep. Testimony of Timothy Jones, 5/11/01 at 44.

2. While the Fourteenth Amendment's due process clause is by its terms applicable only to the States, the Fifth Amendment's due process clause extends to the District of Columbia. *See Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

sions must be made "as promptly as convenient after arrest." 408 U.S. at 485–88, 92 S.Ct. 2593.

■ While the *Morrissey* Court did not define what "prompt" entails, in the context of criminal arrests, the Supreme Court has held that a "prompt" determination of probable cause was one made within 48 hours of arrest. *See County of Riverside,* 500 U.S. at 56, 111 S.Ct. 1661. Furthermore, in *Gerstein v. Pugh,* the Supreme Court held that "as a condition for any significant pretrial restraint of liberty," states must provide a fair and reliable determination of probable cause "either before or promptly after arrest." 420 U.S. at 125, 95 S.Ct. 854.

While a compelling argument exists that a prompt determination of probable cause should be made within 48 hours of arrest, this Court is unwilling to make such a finding in the parole revocation context. The liberty interest of parolees is somewhat less than the arrestees in *County of Riverside* and *Gerstein.* Furthermore, the Supreme Court in *Morrissey* declined to issue any such protocol, for fear of improperly legislating the states' parole revocation processes. However, the Supreme Court did say that the probable cause determination must be "prompt", thereby setting some limit on what the Commission may do. Even defendants interpret "prompt" under *Morrissey* as being three to five days after the arrest of a parolee. *See* Commission's Conclusions of Law at ¶ 14 (arguing that the Commission complies with *Morrissey's* prompt probable cause requirement by holding preliminary interviews within 3–5 days after arrest). While plaintiffs challenge the facial constitutionality of the regulations, their claims focus on the delay of a *final* probable cause determination for more than 21 days from the date of arrest. Plaintiffs do not challenge the Commission's interpretation of "prompt" as being within three to five days. Given the somewhat reduced liberty interests of parolees, the Court finds that a determination of probable cause within three to five days of arrest is a reasonable interpretation of *Morrissey's* requirements.

While conceding that "prompt" means within three to five days, the Commission denies that any of its regulations violate parolees' due process rights. Rather, citing *Ellis,* 84 F.3d at 1423, the Commission contends that its procedures satisfy the promptness requirement by virtue of its pre-arrest finding that "satisfactory evidence" exists of the alleged parole violation and by holding the preliminary interview within 3 to 5 days. In *Ellis,* the D.C. Circuit held that a pre-arrest determination of probable cause may satisfy *Morrissey's* requirement, when viewed in conjunction with the procedure as a whole. 84 F.3d at 1423. Relying on that decision, defendants contend that their pre-arrest determination of "satisfactory evidence" is equivalent to a determination of probable cause, as demonstrated by Michael Stover's statement, and thus, argue that their regulations meet *Morrissey's* promptness requirement.

■ Defendants' contention, however, is internally inconsistent. While defendants claim their determination of "satisfactory evidence" is equal to the standard for probable cause, despite what the Commission's handbook states, and that they therefore comply with *Ellis,* the Commission's reliance on an additional process undermines this assertion. If, in fact, the regulations call for a pre-arrest probable cause determination, as defendants have represented to the court, then defendants cannot justify the additional 21 days of incarceration parolees endure during the Commission's duplicitous post-arrest probable cause procedure.

Defendants have failed to reconcile these competing claims. While claiming that their "satisfactory evidence test" is a standard equal to that of "probable cause," defendants also claim that their post-arrest probable cause process is completely necessary. See 7/16/01 Tr. at 81–84. Defendants simply cannot have it both ways: either the pre-arrest procedure is sufficient, and thus defendants are unjustified in delaying parolees' revocation hearings an additional 21 days while determining probable cause a second time, or, the pre-arrest procedure is an insufficient determinant of probable cause, in which case defendants' regulations fail to provide a prompt determination of probable cause. Accordingly, the Commission's regulations governing the determination of probable cause are facially unconstitutional, either resulting in needless delay, in violation of the parolee's liberty interest, or by failing to provide for a prompt determination of probable cause in violation of *Morrissey.*[3]

While contending that the regulations are facially unconstitutional, plaintiffs further present evidence that the Commission's current non-compliance with those regulations has caused egregious violations of parolees' due process rights. Under the applicable regulations, as outlined above, the Commission's determination of probable cause consists of three distinct steps: (1) a pre-arrest determination, (2) a preliminary interview, and (3) a final decision. According to the regulations, the entire process should take 26 days at the most.

Plaintiffs point to a number of particularly egregious examples of the Commission's failure to follow its own regulations. Marilyn Rowe did not receive a probable cause determination until approximately 50 days after her arrest. John Griffin did not receive a probable cause determination until over 90 days after his arrest. Darnell Bradley did not receive a preliminary interview until over 60 days after his arrest. Lewis Stewart did not receive a preliminary interview until over 90 days after his arrest. Other notably egregious delayed probable cause determinations include: 176 days from arrest, 171 days from arrest, 123 days from arrest, 107 days from arrest, and 84 days from arrest. See Denson Decl. These are not isolated incidents. The Commission admits that these delays were typical of the delays facing other parolees. See Stover Dep. at 71:18—72:15. Plaintiffs reviewed the Commission's records and found that of those parolees eligible for a probable cause determination, at least 136 parolees, not including any of the 116 released without hearings, were not provided with a probable cause determination promptly after arrest. See Denson Decl.

While the Commission maintains that it is improving,[4] the full extent of the problem remains somewhat unclear. The Commission does not have a system for monitoring the timeliness of its interview and hearings, and is unable to organize the information necessary to make such a de-

---

**3.** Defendants' contention that these procedures are justified as a more effective and exhaustive review of probable cause is unpersuasive. Defendants contend that their procedure is justified under the informed use of discretion. See *Gagnon v. Scarpelli*, 411 U.S. 778, 785, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). This contention however is without merit. As the Supreme Court in *Riverside* noted, while flexibility in the process is provided, such flexibility has its limits, and can-

not excuse the infringement of an individual's constitutional rights. See *Riverside,* 500 U.S. at 55–58, 111 S.Ct. 1661.

**4.** On September 6, 2001, defendants filed with the Court a declaration containing updated statistics that arguably indicate some improvement in the average time from arrest to revocation hearing. See Defendants Notice of Filing [48–1].

termination. *See* Response to Interrog. 6, Dep. Ex. 2; Robertson Dep. At 231–232; Denson Decl. However, the Commission does estimate that it is unable to provide probable cause determinations within 24 days of arrest in approximately 20–30% of incoming cases, *see* Denton Dep. at 257. This level of compliance may be unsustainable because it is based on constant overtime and the use of only temporarily assigned staff. *See* Robertson Dep. at 28:9 & 228:19; Denton Dep. at 230:17; Gaines Dep. at 135:3–135:10.

### C. The Commissions' Final Revocation Procedure

■ Plaintiffs also challenge the facial constitutionality of the Commission's regulations governing final parole revocation decisions, claiming that the Commission's regulations fail to provide timely revocation hearings. The Commission's procedures, governed by 28 C.F.R. § 2.102, and § 2.103, provide that a final revocation hearing "shall be scheduled to be held no later than sixty days after a final determination of probable cause." 28 C.F.R. § 2.102(f). The purpose of this final revocation hearing is to determine whether the parolee has, in fact, violated the conditions of his parole as alleged. *See id.* at § 2.103(a).

In *Morrissey*, the Supreme Court held that a final "revocation hearing must be tendered within a reasonable time after the parolee *is taken into custody.*" 408 U.S. at 488, 92 S.Ct. 2593 (emphasis added). There the Court held that a delay of 60 days from arrest "would not appear to be unreasonable." 408 U.S. at 488, 92 S.Ct. 2593. This holding is specifically reflected in the Commission's own report dated January 4, 2001, "[b]y October of 2000, the Commission had a backlog of over 240 arrested parolees who were beyond the Constitutional deadline established by the U.S. Supreme Court in *Morrissey v. Brewer* . . .which is 60 days from the *date of arrest.*" (emphasis added).

The Commission's procedures, as written, fail to satisfy the requirements of due process. While the Supreme Court in *Morrissey* was clear that it did not intend to write a code of procedure for parole revocation hearings, it did provide guidance. The Supreme Court was clear that a final revocation hearing must be held within a reasonable period of time after arrest. *See Morrissey*, 408 U.S. at 488, 92 S.Ct. 2593. As written, the Commission's regulations provide for a final revocation hearing sixty days after *a final probable cause determination.* This would not appear to be unreasonable, *if* the Commission provided a prompt probable cause determination. However, because the Commission delays the inception of the sixty-day schedule from the date of arrest to the date of a probable cause determination, and it takes the Commission, at a minimum, 26 days to reach a final probable cause determination, this results in at least 86 days of incarceration from arrest to a hearing.

Moreover, under the Commission's regulations, the final revocation hearing is then followed by an additional 21–day period of incarceration during which time the final parole revocation decision is made. *See* 28 C.F.R. § 2.105(c). This means that parolees do not receive a final revocation decision until 107 after arrest, at best. This is almost twice as long as the 60 day benchmark mentioned in *Morrissey*. In the Court's view, a delay of 107 days for a final revocation decision is unreasonable.

Furthermore, as defendants admit, there have been delays in providing revocation hearings beyond the unreasonable deadlines set in the regulations. *See* Stover Dep. at 71:18—72:15. Fred Robinson was detained for over four months without

receiving a revocation hearing. Other examples of egregious delays between warrant execution and final revocation hearing include 217 days, 183 days, 165 days, 156 days and 152 days. *See* Denson Declaration.[5] The Commission's delay in providing final revocation hearings is exacerbated by initial delays in providing probable cause determinations (since the Commission's regulations provide for a hearing 60 days from the probable cause determination, rather than 60 days from arrest) and further delays in providing final revocation decisions. As stated previously, the revocation hearings provided for in the Commission's regulations do not result directly in a revocation decision. The actual decision should be made by the Commission within 21 days of the hearing, excluding holidays. *See* 28 C.F.R. § 2.105(c). However, the Commission admits it does not meet this 21 day deadline 90% of the time. *See* Shoquist Dep. at 39:21—40:11. Further, the Commission admits that without additional staff positions for this function, these delays will continue or worsen. *See* Shoquist Dep. at 91:8–92:15. While the Commission maintains that the delays have diminished, it acknowledges that as recently as July 2001, the average period from arrest to final decision remains at least 140 days. *See* Robertson Aff. at 2, 4. The Commission files show delays between arrests of individuals and final decision of 201 days; 196 days; 189 days; and 188 days for two people. *See* Denson Decl.[6]

There have also been delays for parolees held for warrants based on alleged criminal convictions. In these cases, the Commission is not required to provide probable cause hearings, but must still hold revocation hearings within 90 days of arrest. Plaintiffs' point to egregious examples of delays in this context of 326 days, 211 days, 192 days, 185 days, and 175 days. *See* Denson Decl.

According to defendants' representations at the hearing, the average time from arrest to revocation hearing is 92 days, and the average time from arrest to a final decision is 131 days. 7/17/01 Tr. at 69. The U.S. Marshal Service provided an impartial report stating that the average time from arrest to revocation hearing is 99 days, and the average time from arrest to final decision is 156 days. It is clear, no matter what statistics the Court looks to, the Commission has failed and continues to fail to meet the requirements of its own unreasonable regulations.

In the opinion of the Court, it would appear to comport with due process for the Commission to provide a final determination of probable cause within 5 days of arrest, a final revocation hearing 60 days thereafter (within 65 days after arrest), and a final revocation decision 21 days thereafter (within 86 days of arrest). While this may be at the outer limits of what is reasonable, given the flexibility permitted by the *Morrissey* Court for the parole revocation process, the Court cannot conclude that a total period of 86 days would be *per se* unreasonable.

---

5. One serious repercussion of the Commission's failure to provide revocation hearings within a reasonable period is that some parolees are detained awaiting revocation hearings for a longer period than their potential penalty under the Commission's guidelines. *See* Robertson Dep. at 202:13—206:14; Shoquist Dep. at 94:17—95:16; 102:16–104:3; Michael Green Dep. at 80:13—82:20.

6. In at least 32 instances the final outcome after these delays has been a finding that the evidence did not establish that any parole violation actually occurred. *See* Robertson Aff. at p. 3.

### D. The Commissions' Regulations Regarding Discovery

Plaintiffs also allege that the Commission's regulations denying parolees the opportunity to review all the evidence against them before having to present their case violate principles of due process. First, plaintiffs complain that they are not provided discovery prior to the preliminary interview. The Commission's procedures provide for the discovery only at the final revocation hearing. Under 28 C.F.R. § 2.103(d), "all evidence upon which the finding of violation may be based shall be disclosed at or before the [revocation] hearing." [7]

Second, plaintiffs complain that they are not provided all the information upon which the Commission bases its decision as to whether a violation has occurred and, if so, what the Commission's response will be. The Commission's regulations provide that "all evidence upon which the finding of violation may be based shall be disclosed to the alleged violator at or before the revocation hearing." *See* 28 C.F.R. § 2.103(d). Plaintiffs contend that the regulations fail to provide similar disclosure of such evidence with respect to what actions should be taken in the event a violation is found so that the examiner can recommend the appropriate action, in violation of due process. Plaintiffs argue that this violates *Morrissey's* requirement that a parolee be afforded the opportunity to fully address the case against him or her.

Finally, plaintiffs complain that the Commission makes revocation decisions without hearing the parolee's case. Although the parolee's full case is heard by the hearing examiner, the Commissioners may overrule the factual findings of the hearing officer without listening to a tape of the parolee's arguments upon which the hearing officer's decision was based.

The Court is mindful of the Supreme Court's guidance in *Morrissey* that "[The Court] cannot write a code of procedures; that is the responsibility of each State" and "[The Court has] no thought to create an inflexible structure for parole revocation procedures." 408 U.S. at 488, 490. How the Commission writes its parole revocation regulations is up to the Commission, so long as those regulations do not violate due process. However, *Morrissey* is also clear as to what is required to comport with due process. "With respect to the preliminary hearing..., the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged." 408 U.S. at 486–87, 92 S.Ct. 2593. At the revocation hearing, "[t]he parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or if he did, that the circumstances in mitigation suggest that the violation does not warrant revocation." 408 U.S. at 488, 92 S.Ct. 2593. The "minimum requirements of due process ... include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) ...." 408 U.S. at 489, 92 S.Ct. 2593.

■ The Court would be remiss in its responsibilities if it did not mandate the Commission's strict compliance with the clear and plain language of *Morrissey*.

---

7. This appears contrary to the statements of Michael Stover that the preliminary interview is an opportunity for the parolee to rebut that evidence used against him in satisfying the Commission's finding that probable cause exists that the parolee violated his parole. The parolee cannot rebut the evidence against him, if he does not know what the evidence is.

First, parolees must be provided notice of the probable cause hearing (or interview), the reason for the hearing, and what violations have been alleged. Since the Supreme Court stated that this notice must inform the parolee that the hearing *will* take place, this necessarily implies that the parolees are to receive this notice *before* the hearing. Second, prior to the final revocation hearing, the Commission must disclose to the parolee the evidence against him. In order for the parolee to have a meaningful right to be heard at the hearing on the issue of the alleged parole violation and mitigation against revocation, the parolee is entitled to the disclosure of evidence on *both* of these issues *before* the final hearing. Third, in order for the parolees to have a meaningful right to be heard and present evidence at the hearing, the ultimate decision maker must be informed of all of the parolees' arguments and evidence prior to rendering a decision.

The Court will not re-write the Commission's regulations or dictate to the Commission exactly how it should comply with the due process principles spelled out in *Morrissey.* On the other hand, the Court will require that the Commission comply fully with the *Morrissey* mandates. It is for the Commission to promulgate regulations and procedures that will survive constitutional scrutiny to ensure that all parolees receive proper notice of the allegations against them, receive all discovery related to the issue of whether there was a parole violation, and if so, whether parole should be revoked in advance of the hearing, and that the final decision maker is informed of all of the parolees' arguments and evidence prior to rendering a decision.

### E. The Propriety of the Relief Requested

#### 1. Requirements of Injunctive Relief

█ Plaintiffs claim that the evidence clearly demonstrates a pervasive pattern of unconstitutional delays sufficient to merit injunctive relief. In order for injunctive relief to be proper, plaintiffs must demonstrate a "pervasive pattern...flowing from a deliberate plan by the named defendants." *Ellis,* 84 F.3d at 1424 (*citing Rizzo,* 423 U.S. at 379–380, 96 S.Ct. 598). This standard further requires plaintiffs to show that either "the local officials had direct responsibility for allegedly unconstitutional behavior or that the incidence of such misconduct is more severe than elsewhere." *Ellis,* 84 F.3d at 1424 (*citing Rizzo,* 423 U.S. at 375–76, 96 S.Ct. 598).

Defendants contend that there is nothing in the record before the Court to show that the Commission has caused delays to occur in its revocation proceedings through a deliberate plan, and denies that it has "directed, authorized, or approved" any such delays. Rather, defendants contend that the delays are the result of three factors: 1) Congress's failure to appropriate proper levels of funding to the Commission, 2) the execution of out-standing warrants issued by the D.C. Board of Parole, and 3) the actions of other agencies involved in the parole process. In short, while conceding that the Commission and the Attorney General were aware that such problems were likely to occur, acknowledging the critical status of affairs, and admitting to being "seriously unable" to cope with the Commission's caseload, defendants attempt to defend their practices by claiming that those delays were not the result of "conduct different from [their] operational norm." This statement clearly illustrates that the defendants, however tacitly, accept the current and continuing state of affairs, a state of affairs in which parolees' due process rights have been repeatedly disregarded, resulting in parolees' being stripped of their liberty and held in prison for unconscionable peri-

ods of time without even a semblance of due process. The Commission's affairs are in such a state of disarray that it admits to relying upon distraught family members to alert the Commission to its own incompetence. *See* Robertson Dep. at 76.

Notwithstanding the Commission's excuses regarding the cause of its deficient performance, the record is replete with compelling, competent and uncontroverted evidence illustrating a pervasive pattern of undue delays. Indeed, the uncontroverted facts of this case show that defendants are responsible for all aspects of the parole revocation process, including the promulgation and implementation of those procedures complained of in this action. Through the defendants' continued adherence to these regulations, and a policy of even more egregious delays, the Commissions' actions have directly resulted in the continuing violations of parolees' constitutional rights, violations that the record has illustrated have been continuous in nature, continue to this day, and will undoubtedly continue into the future unless this Court takes appropriate corrective action. Furthermore, while the Court does not question whether the existing problems have been caused by funding woes outside of the Commission's control, such a lack of resources, while deplorable, cannot justify continuing violations of parolees' constitutional rights. *See Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Rouse v. Cameron,* 373 F.2d 451, 457 (D.C.Cir.1966) (a "[c]ontinuing failure to provide suitable... treatment cannot be justified by lack of staff or resources"); *Detainees of Brooklyn House of Detention for Men v. Malcolm,* 520 F.2d 392 (2nd Cir.1975) ("inadequate resources of finances can never be an excuse for depriving detainees of their constitutional rights").

The Court notes that this case is completely distinguishable from *Ellis,* where the D.C. Circuit found that evidence that the D.C. Board of Parole denied revocation hearings within 60 days and even within 90 days to "a small but significant number of alleged parole violators" did not warrant injunctive relief. 84 F.3d at 1424. Here, by the Commission's own admissions, the problems are severe and pervasive.

## 2. The Existence of Continuing Violations

Injunctive relief is only justified where the plaintiff can show continuing, adverse effects resulting from the complained-of event. *See Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). In this case, defendants contend that plaintiffs, while succeeding in establishing a past pattern of delays, have failed to show a continuing pattern of such events. While a past injury may have a bearing upon whether an injunction should be granted, the plaintiffs must show that there is a real immediate threat that the injury will continue. *See O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Defendants claim that since the D.C. Board of Parole has been abolished, the threat of such an influx of cases is no longer real, and thus, that plaintiffs cannot show a continuing threat. Interestingly, despite this defense, the Commission admits that the current average time from execution of a warrant to the date of a final revocation hearing remains in excess of that authorized by the Commission's own guidelines.

Much of the evidence in support of an injunction comes from the Commission itself. The Commission admits that it has detained parolees in violation of their constitutional rights by failing to provide prompt probable cause determinations and failing to provide reasonably timely revo-

cation hearings. *See e.g.,* Commission's Proposed Conclusions of Law, ¶ 4 ("[t]he fact that many parolees have been unconstitutionally detained through delayed revocation proceedings"); Commission's Proposed Findings of Facts, ¶ 7 (delays of four months "common", some delays of "six months or more") *citing* Stover Dep. at 71–72 & Robertson Dep. at 202–206. The Commission also admits that its files are in such disarray that it cannot determine the actual delays experienced by parolees for whom they have had revocation hearings since August 2000, or identify the extent of the delays now being experienced by parolees whose parole revocation proceedings are pending. *See, e.g.,* Gaines Dep. at 85:5; Timothy Jones Dep. at 87:15–87:18; Robertson Dep. at 175:5–175:7.

Due to the state of disarray, plaintiffs had difficulty in assessing and evaluating the Commission's records. *See* Denson Decl. Nevertheless, Defendants' admissions and the information that is ascertainable from the Commission's files make it clear that these violations have been pervasive and remain ongoing. As mentioned previously, the system fell into a state of what the Commission's General Counsel admits was "near collapse." *See* Stover Dep. at 47:10–50:3; Commission's Proposed Findings of Fact at ¶ 6. Defendants became aware of this state of near collapse almost immediately. *See* Gaines Dep. at 90:1—93:11. Five months later, the system remained in what the Commission described to the incoming Bush Administration as a state of "crisis" in which the Commission was unable to keep up with D.C. and federal caseloads. *See* Dep. Ex. 6: USPC Transition Report of January 4, 2000, at 4. As of January 17, 2001, Commission Case Operations Administrator Sam Robertson reported to Defendants at the Commission's quarterly meeting that there was a backlog of approximately 300 revocation cases. *See* Dep. Ex. 29 & Dep.

Ex. 32. Over two months later, a large backlog remained. On March 29, 2001, the Commission represented to Congress that it had over 200 overdue revocation hearings, over 100 backlogged and overdue warrant requests, and over 300 late hearings of other types. *See* Dep. Ex. 18: 2002 Budget at 16.

In addition to such evidence demonstrating the continuing nature of the violations, the imminent threat of future violations is also clearly established by the fact that the policies and regulations causing these violations have not been changed. Having thus determined that the regulations governing the Commission's determination of probable cause and the final revocation hearings represent an unconstitutional violation of due process, the Commission's continued reliance on those policies represents a continued threat of such violations. Under this analysis, it is clear that injunctive relief is appropriate in this case. Accordingly, it is hereby ordered that plaintiffs' motions for class certification and summary judgment are granted and defendants' motion for summary judgment and/or to dismiss is denied.

### *Conclusion*

Having determined that injunctive relief is appropriate in this case but mindful that the Commission has recognized that it "is constitutionally obliged to resolve the current problem of repeated unconstitutional delays in the most efficient and expedient manner possible," *see* Defs.' Conclusions of Law ¶ 9, the Court will defer the entering of a final judgment on the merits at this time. The Court will afford the defendants fifteen (15) days from the date of this order, to wit, October 12, 2001, to promulgate and present to the Court an appropriate plan to resolve the problems addressed in this opinion. Plaintiffs shall file a response to defendants' plan no later

than fifteen (15) days thereafter, or October 29, 2001. A status hearing is scheduled for 10:00 a.m. on November 13, 2001 in Courtroom One.

In the event that the Commission fails to present a satisfactory plan to resolve the subject problems, the Court shall enter an appropriate final order and grant such relief to the plaintiffs as may be appropriate. The deadlines for submission of the Commission's plan and plaintiffs' response shall not be extended.

**IT IS SO ORDERED.**