**Anthony PATE, Plaintiff,**

v.

**UNITED STATES, et al., Defendants.**

**No. CIV.A. 02–1529 RBW.**

United States District Court,
District of Columbia.

Aug. 6, 2004.

---

Fredrick J. Brynn, Brennwald & Robertson, LLP, Washington, DC, for Plaintiff.

Stratton C. Strand, U.S. Attorney's Office, Harold S. Ginsberg, Bode & Grenier, LLP, Holly Michelle Johnson, Office of Corporation Counsel, D.C., Washington, DC, for Defendants.

### MEMORANDUM OPINION

WALTON, District Judge.

Currently before the Court is Defendant United States' Motion for Summary Judgment ("Def.'s Mot.") [DE # 30] and the plaintiff's opposition thereto. The plaintiff, Anthony Pate, brings this action against the United States alleging that the United States Parole Commission ("USPC") and its employees caused him to be wrongfully detained for an alleged parole violation. In support of its motion for summary judgment, the United States advances three grounds upon which it contends the Court should rule in its favor: "(1) [the p]laintiff's claims are barred by the doctrine of *res judicata;* (2) the United States is shielded from liability by sovereign immunity; and (3) the United States fully complied with its regulations." Def.'s Mot. at 1. Because the Court concludes that the Federal Tort Claims Act ("FTCA") does not confer subject matter jurisdiction to this Court over the claims

actually asserted in this case, where the alleged negligence arises out of the failure of the United States to properly carry out its administrative responsibilities, the defendant's motion must be granted.

## I. FACTS

On October 19, 1994, Anthony Pate was released on parole after serving sentences for robbery and possession of an unlicensed firearm convictions that were secured in the Superior Court of the District of Columbia. Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("Def.'s Statement") ¶ 1, adopted in the Memorandum of Points and Authorities in Support of Defendant United States' Motion for Summary Judgment ("Def.'s Mem."); see also Def.'s Mot. at Exhibit ("Ex.") A; Plaintiff's Opposition to Defendants [sic] United States' Motion for Summary Judgment ("Pl.'s Opp'n") at 3–4.[1] On September 8, 1999, the District of Columbia Board of Parole ("DCBP") issued a parole violation warrant for Pate's arrest alleging his involvement in the first-degree murder of his brother.[2] Def.'s Mo., Ex. F; Pl.'s Opp'n at 3. Pate was arrested pursuant to the warrant on February 3, 2000. Def.'s Mot., Ex. F; Pl.'s Opp'n at 3.

The charges against Pate for the killing of his brother were eventually dismissed without prejudice for want of prosecution on June 1, 2000.[3] Def.'s Mot., Ex. K; Pl.'s Opp'n at 3. Pate's counsel informed the DCBP of the dismissal of the charges the following day. Def.'s Mot., Ex. H. According to the government, "the case [against Pate] remain[ed] an open and ongoing grand jury investigation" despite the grand jury's failure to return an indictment. Def.'s Mot., Ex. K.

Within the first few months of Pate's detention, four status hearings were convened to assess whether Pate had violated his parole, two held on July 11, 2000 and August 2, 2000, prior to the federal government assuming control over the District of Columbia's parole system, and two held on September 19, 2000, and October 6, 2000,[4] after the federal government assumed control over the system.[5] Def.'s Mot., Ex. I, M, O & R. At each hearing, the convening board determined that it did not have enough evidence to make an informed determination concerning whether Pate's parole should be revoked and deferred a decision on the matter pending

1. The plaintiff failed to number the pages of his opposition. The Court will therefore refer to the pages in the sequential order in which they were submitted.

2. This warrant was for Pate's second alleged violation of his parole. A warrant was issued previously in June of 1997 and Pate was arrested on that warrant for allegedly possessing and selling a firearm. Def.'s Mot., Ex. C. Subsequently, Pate's parole was reinstated. Def.'s Mot., Ex. D.

3. After hearing from over 50 witnesses and examining Pate's DNA, a grand jury could not find that there was probable cause for the return of an indictment against Pate. Def.'s Mot., Ex. V.

4. There is a dispute as to the dates of these hearings. The United States offers documentation purporting to be the official record of

those hearings that states that the status hearings were held on July 11, 2000, Def.'s Mot., Ex. I, August 2, 2000, id. at Ex. M, September 19, 2000, id. at Ex. R, and October 6, 2000, Def.'s Mot., Ex. O. Pate alleges that the hearings were held on June 27, July 19, August 2, and September 19, 2000, but offers no documentary corroboration of these dates. Pl.'s Opp'n at 3. Therefore, the only documentation in the record supports the government's assertions as to the dates of the hearings.

5. On August 5, 2000, the USPC assumed responsibility of the duties of the former DCBP. See Def.'s Statement ¶ 6 (citing National Capital Revitalization and Self–Government Improvement Act of 1997, Pub.L. 105–33, 111 Stat. 712 (1997)), now codified at D.C.Code § 24–132 (2004) Pl's Opp'n at 8. Pate has therefore dismissed his claims against the DCPB and is now only asserting claims

the presentation of further information. Def.'s Statement ¶ 4; Pl.'s Opp'n at 3. As the records of those hearings indicate, one of the reasons that the hearing officer repeatedly concluded that the hearings had to be postponed was that the investigating officers had not appeared to present testimony. Def.'s Mot., Ex. I, M, O & R. After the fourth occasion on October 6, 2000, the USPC formally requested that it receive any documentation the United States Attorneys Office ("USAO") had related to the evidence against Pate, specifically, any documentation about eye-witnesses, any statements of the investigating officers, and whether the firearm used to commit the murder had been recovered. Def.'s Mot., Ex. P; Pl.'s Opp'n at 3. Within a week, the USAO responded to the request by providing the USPC with the names and telephone numbers of the investigating officers and several police reports relating to Pate, but it refused to produce the eye-witnesses for "security" reasons. Def.'s Mot., Ex. Q; Pl.'s Opp'n at 3. It also reported that no weapon was ever recovered. Def.'s Mot., Ex. Q.

Eight months later, on June 11, 2001, the USPC subpoenaed the police officers to appear at a fifth hearing on June 19, 2001. Def.'s Mot., Ex. S, T, & U; Pl.'s Opp'n at 3. Again the officers failed to appear for the hearing. Def.'s Mot., Ex. V; Pl.'s Opp'n at 3. On June 19, 2001, the hearing examiner stated that he had no concrete evidence before him that implicated Pate in the murder and criticized the officers for failing to appear upon request for the fifth time. Def.'s Mot., Ex. V. The examiner concluded that Pate had not violated his parole and recommended that

Pate be returned to parole supervision with the time that Pate had been in custody on the murder warrant credited to his sentence. *Id.* Despite this recommendation, Pate remained in custody until early July of 2001. Pl.'s Opp'n at 3–4. The rationale given for the delay by the USPC, ten days after the June 19, 2001 recommendation, was that the "exceptional circumstances" of Pate's violent history and past obstruction of justice combined with him being charged with murder based on the statement of an eye-witness who identified Pate as the perpetrator, required that "a final attempt by the [USPC] to convene a revocation hearing with the necessary witnesses" be made prior to Pate's release. Def.'s Mot., Ex. V at 6.

While waiting for yet another hearing, Pate filed a petition for a writ of habeas corpus during the first week of July 2001.[6] Pl.'s Opp'n at 4. However, after nearly a year in custody, the USPC finally released Pate on July 10, 2001, concluding that no further evidence would be brought before it that might establish the probable cause necessary to hold him. Def.'s Mot., Ex. V & W. In total, Pate "was in custody under the jurisdiction of the [USPC] from August 5, 2000, through on or about July 10, 2001." Def.'s Statement ¶ 16.

Pate filed this action on August 5, 2002, alleging that the USPC violated his civil rights by detaining him for nearly nine months without a timely hearing to determine his parole status.[7] Pl.'s Opp'n at 2. On September 25, 2003, the United States moved for summary judgment under three theories: (1) that Pate's claims are barred by *res judicata* and collateral estoppel based on the resolution of a prior class

against the USPC. Stipulation of Dismissal of August 14, 2003 (DE # 27).

6. The plaintiff does not indicate exactly when his petition was filed and has not provided a copy of the petition to the Court for its consideration.

7. Actually, the plaintiff alleges that his claims result from the actions of the United States that caused his unlawful detainment from June 1, 2000 until July 14, 2001. Pl.'s Opp'n at 2. But, because the defendant did not assume control over the District of Columbia parole system until August 5, 2000, and can-

action suit in which Pate was a party; (2) that it is shielded from suit pursuant to the FTCA in this action by sovereign immunity; and (3) that the USPC acted in compliance with its governing regulations, 28 C.F.R. § 2.101 *et seq.* (2001).[8] Def.'s Mot. at 1. The plaintiff opposes the motion.

## II. ANALYSIS

### A. Whether the Plaintiff has Pled Constitutional Claims against the United States?

The United States in its motion for summary judgment states that "[the p]laintiff

makes only common-law tort claims against the United States." Def.'s Mem. at 1. Pate argues in his opposition to the summary judgment motion that, in fact, he has alleged constitutional claims against the United States. Pl.'s Opp'n at 2.

Pate initially filed suit against both the District of Columbia and the United States, as well as against individual members of the DCBP, but he did not assert both constitutional and common law claims against every defendant. Plaintiff's Complaint for Violation of Civil Rights, Gross Negligence and Damages ("Pl.'s Compl.")

not be held responsible for actions of others prior to that date, the Court will read the plaintiff's complaint as challenging the United States' actions from August 5, 2000, until July 14, 2001, the time during which Pate was being detained by the USPC. This reading of the complaint is compelled by § 11232 of the National Capital Revitalization and Self–Government Improvement Act of 1997, Public Law 105–33 (1997), which transferred parole authority over District of Columbia Code offenders from the DCPB to the USPC. Section 11232 of the Act, codified at D.C.Code § 24–132, states, in pertinent part:

> The District of Columbia shall defend any civil action or proceeding brought in any court ... or against the District of Columbia or its officers, employees, or agents, and shall assume any liability resulting from such an action or proceeding, if the action or proceeding arises from the ... (C) activities of the District of Columbia Board of Parole.... Nothing in this section shall be construed—(A) as a waiver of sovereign immunity, or as limiting any other defense or immunity that would otherwise be available to the United States, the District of Columbia, their agencies, officers, employees, or agents; or (B) to obligate the District of Columbia to represent or indemnify the Corrections Trustee [the authorized agent chosen to effectuate the transition as detailed in Sec. 11232(a) & (b)] or any officer, employee, or agent where the Trustee (or any person employed by or acting under the authority of the Trustee) acts beyond the scope of his authority.

D.C.Code § 24–132(h)(1), (h)(3).

8. The regulations governing the USPC at the time were set forth in 28 C.F.R. § 2.101 *et seq.* (2001). Section 2.101 states, in pertinent part:

> A parolee who is retaken on a warrant issued by the [USPC] shall *promptly* be offered a preliminary interview .... The purpose of the preliminary interview is to enable the [USPC] to determine if there is probable cause to believe that the parolee has violated his parole as charged, and if so, whether a local or institutional revocation hearing should be conducted....
>
> ... A postponed preliminary interview may be conducted as a local revocation hearing by an examiner or other officer designed by a Commissioner provided that the parolee has been advised that the postponed preliminary interview will constitute his final revocation hearing. It shall be the [USPC's] policy to conduct a combined preliminary interview and local revocation hearing whenever adverse witnesses are required to appear and give testimony with respect to contested charges.

Section 2.102(f) states, in pertinent part:

> A local revocation hearing shall be scheduled to be held *within sixty days* of the probable cause determination. Institutional revocation hearings shall be scheduled to be held *within ninety days* of the date of the execution of the violator warrant upon which the parolee was retaken. However, if a parolee requests and receives any postponement, or consents to a postponement, or by his actions otherwise precludes the prompt conduct of such proceedings, the above-stated time limits may be extended....

¶¶ 33–35. Pate generally alleges in the first paragraph of his complaint that the "*[d]efendants* subjected [him] to *constitutional* violations of his Due Process rights under the Fifth Amendment and unreasonable seizure in violation of the Fourth Amendment to the Constitution. Pendent common law claims are also made by the plaintiff including gross negligence and negligence." *Id.* ¶ 1 (emphasis added). However, elsewhere in the plaintiff's complaint, where he specifically names the defendants against whom he is asserting his claims, the plaintiff carefully crafts his allegations so as to assert his constitutional claims only against the District of Columbia and its employees. For example, under the heading "Parties," Pate identifies individual members of the DCBP by name and alleges that those persons are responsible for "insur[ing] that all *constitutional*, statutory and local laws are complied with." *Id.* ¶¶ 5–7 (emphasis added). Yet, when Pate identifies the United States as the federal entity responsible for the USPC and its employees, he only alleges that the United States is responsible for "gross negligence" committed by its employees, and not for the commission of any constitutional violations. *Id.* ¶ 8. Further, in setting forth the counts against the defendants, Pate divides his claims into "constitutional claims" and "common law claims," and lists only the "[t]he [d]efendants District of Columbia, [and individual members of the DCBP, namely,] Margaret Quick, Jasper Clay and Michael Green" under the heading "constitutional claims," *id.* ¶¶ 3–4, while listing the United States, the USPC, and the District of Columbia under the heading "common law claims." *Id.* ¶ 35.

Pate's claims against the individual members of the DCBP and the District of Columbia have already been dismissed. Memorandum Opinion of July 24, 2003; Stipulation of Dismissal at 1. Yet, Pate has suggested in his opposition to the current motion that his constitutional claims have survived the dismissal of the District of Columbia defendant since he "was held in violation of his constitutional rights and [the USPC] violated his rights to due process and to be free from unreasonable seizure by failing to conduct timely revocation hearings within a reasonable time after his detention." Pl.'s Opp'n at 1. In sum, Pate now asserts that he pled constitutional claims against the United States.

Generally, a court should liberally construe a complaint so as to cause the facts and allegations in the complaint to be construed in the light most favorable to the plaintiff. *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C.Cir.1983). However, where the plaintiff has demonstrated knowledge of how to plead a proper constitutional claim, but appears to have deliberately plead that claim only against certain defendants, the complaint should not be read as having pled the claim against all of the defendants. In other words, the complaint should not be so liberally construed so as to have it asserting a claim against a defendant where the plaintiff has meticulously indicated that the claim is only being plead against other named defendants. *Cf. Ali v. District of Columbia*, 278 F.3d 1, 8 (D.C.Cir.2002) (declining to construe a reference to a statute in the plaintiff's opposition to the defendant's request for dismissal as a constructive amendment of the plaintiff's complaint so as to create a claim against the defendant under that statute). The *Ali* Court reasoned that even construing the plaintiff's pleadings "liberally," the reference to the Religious Freedom Restoration Act ("RFRA") in a response to a motion to dismiss was "insufficient to put the District [of Columbia] on notice that it faced a RFRA claim." *Id.* (citing *Sinclair*, 711 F.2d at 293 (holding that complaint must give "defendant fair notice of the plaintiff's claim and the grounds upon which it rests")). *But see*

*Richardson v. United States,* 193 F.3d 545, 548–49 (D.C.Cir.1999). 193 F.3d at 548–49 (construing a claim first mentioned in an opposition to dismissal filing by a *pro se* litigant as an amendment to the plaintiff's complaint based on the special deference given to *pro se* litigants). Here, Pate is represented by counsel and is not a *pro se* litigant. Pate's attorney has carefully articulated allegations in the count of the plaintiff's complaint specifically identifying against which defendants the claims pertain. It follows then, that the allegations alleged against each defendant in the individual counts of the complaint would have placed only those defendants named in a count on notice that they would have to defend against the claim asserted in that count. For the Court to rule otherwise would subject each defendant to liability on every count of the complaint, even though they were not named in every count. This would clearly be authorizing assault by ambush, which the Court cannot permit. Therefore, the Court finds that it must reject Pate's assertion in his opposition that he has alleged constitutional claims against the United States.

## B. Standard of Review for Summary Judgment

Early resolution of an issue in the form of summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. of Civ. P. 56(c). Thus, absent disagreement about the facts, Rule 56(c) entitles a defendant to judgment where the events cannot be presented in such a way that entitles the claimant to judgment in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, summary judgment is mandated after there has been "adequate time for discovery . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burned of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment, nonetheless, is a "drastic remedy, [and therefore] courts should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue." *Greenberg v. Food & Drug Admin.,* 803 F.2d 1213, 1216 (D.C.Cir.1986).

## 1. Whether the Previous Class Action Suit is a Bar to this Suit

The United States alleges that Pate's common law tort claims for negligence and gross negligence are barred by *res judicata* based on the consent decree entered in *Long v. Gaines,* 241 F.Supp.2d 1 (D.D.C. 2002), a class action lawsuit that sought injunctive relief for alleged violations of parolees' right to procedural due process. *Long* was filed on behalf of all District of Columbia Code offenders who were detained pending parole revocation proceedings before the USPC.[9] Def.'s Mem. at 1.

---

**9.** The plaintiffs in *Long* brought suit against the USPC on January 3, 2001, claiming violations of the right to procedural due process under "the Fourth and Fifth Amendments to the United States Constitution, the laws of the United States and the laws of the District of Columbia." [*Long*] Class Action Complaint at 1, 25, *reprinted in* Def.'s Mot., Ex. 2. The *Long* plaintiffs sought class action status under Rule 23(b)(2). [*Long*] Motion for Certification as Class Action at 1, *reprinted in* Def.'s Mot., Ex. 3, which the Court granted, *Long v. Gaines,* 167 F.Supp.2d 75, 83 (D.D.C.2001). However, the Court later dismissed the action in order to facilitate the parties' settlement. *See* Proposed Consent Decree and Order [in *Long* ], No. 01–0010, Dec. 17, 2002.

The United States posits that the litigation strategy of the class and the result in *Long*—seeking and receiving injunctive relief that required "the [USPC to] adopt new regulations governing the conduct of parole-revocation proceedings for all D.C.Code parolees" and the awarding of "attorney's fees in the amount of $288,500," . . . [i]n exchange for [t]he class plaintiff dismiss[ing] their claims with prejudice and specifically waiv[ing] "*any and all other claims* for . . . *monetary relief of any kind* "—precludes Pate from pursuing the relief he is seeking in this case because he squarely fell within the *Long* plaintiff class. *Id.* at 8 (citing *Long v. Gaines,* 241 F.Supp.2d 1, 2–4 (D.D.C. 2002)). Accordingly, the United States argues that "[t]he doctrine of *res judicata* prohibits the relitigation of any and all issues that actually were, *or could have been,* adjudicated in the earlier case," which here includes Pate's common law claims because "[the plaintiff class in *Long* ] could have sought to attack [the USPC's] conduct on . . . FTCA grounds." *Id.* at 9 (citation omitted).

Pate "denies that he was an actual member of the [*Long* ] class." Pl.'s Opp'n at 5. He responds that his common law claims are not barred by *res judicata* because it would violate due process to impose the consequences of *res judicata* against him resulting from a case of which he had no knowledge and no opportunity to exempt himself. *Id.* He further contends that absent actual notice of the *Long* class action case, his failure to affirmatively join the plaintiff class in *Long* prohibits the preclusive effect of the judgment in that case on his ability to pursue this matter. *Id.* Class actions, which are authorized under Federal Rule of Civil Procedure 23, facilitate the hearing of common claims by multiple plaintiffs so long as the number of members in the class make joinder impracticable, the class members' individual claims share common questions of law or fact, the

representative parties advance claims that are representative of the whole class, and "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *Doe v. District of Columbia,* 701 F.2d 948, 963 (D.C.Cir. 1983). The well established maxim that a party only gets one chance to litigate a claim applies equally in the class action context, for when the requirements of a class action are met, a subsequent judgment on the merits binds the entire class from ever re-litigating the same claims or the issues pertinent to that judgment. *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

There are three kinds of class actions that a court can certify under the Federal Rules. Fed.R.Civ.P. 23(b); *Eubanks v. Billington,* 110 F.3d 87, 91–92 (D.C.Cir.1997). In general, Rule 23 provides for class certification (1) where separate suits would harm the interests of other individual members of the class under Rule 23(b)(1); (2) where injunctive or declaratory relief is sought for the benefit of the whole class under Rule 23(b)(2); or (3) where the class shares commonality as to issues of fact or law making a class action the best way to proceed under Rule 23(b)(3). The section of Rule 23 under which classification is sought affects the notice requirements and opt-out abilities of individual class members. *Eubanks,* 110 F.3d at 92. Specifically, class certification under Rule 23(b)(3) requires application of the notice procedures provided for in the Rule. Fed.R.Civ.P. 23(b)(3), (c)(2); *Eubanks,* 110 F.3d at 92; *Larionoff v. United States,* 533 F.2d 1167, 1184 (D.C.Cir.1976) (addressing the (b)(1) provision specifically, but drawing parallels between (b)(1) and (b)(2) and contrasting those provisions with (b)(3)). There are no like "burdensome and costly notice requirements" set out in the Federal Rules for class certification under (b)(1) and (b)(2), which is, in fact, one of the reasons that representative

plaintiffs might choose (b)(1) or (b)(2) certification over (b)(3) certification.[10] *Eubanks,* 110 F.3d at 92; *Larionoff,* 533 F.2d at 1184 (citing *Sosna,* 419 U.S. at 397 n. 4, 95 S.Ct. 553 (1975)); *Childs v. United States Bd. of Parole,* 511 F.2d 1270, 1276 (D.C.Cir.1974). Rule 23(b)(2) has been interpreted, consistent with due process, as leaving notice to the discretion of the trial court, especially where the defendant's alleged actions have affected the plaintiff class in generally the same manner. *See Woodward v. Rogers,* 344 F.Supp. 974, 980 n. 10 (D.D.C.1972) (reflecting on whether notice was needed to alert the Rule (b)(2) class of the pending action, the Court determined that "where the adequacy of the representation of the class interests by the named parties is clear, where no apparent purpose would be served by notice to this wide-ranging class even if notice were at all practicable, and where, indeed, judg-ment is in favor the of class, the essential requisites of due process have been met without further notice"), *aff'd without opinion* 486 F.2d 1317 (D.C.Cir.1973); *see also Eubanks,* 110 F.3d at 94–95; *Larionoff,* 533 F.2d at 1186 & n. 44.[11] In fact, "[w]hen an action is certified under Rule 23(b)(2) . . . absent class members are not required to receive notice or to have the opportunity to opt-out of the suit[;][d]ue process requires only that the class members be adequately represented." *EEOC v. Gen. Tel. Co. of Northwest, Inc.,* 599 F.2d 322, 334 (9th Cir.1979) (citations omitted), *aff'd* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); *see also Eubanks,* 110 F.3d at 96–99 (holding that even when notice was given, the District Court has discretion to deny a plaintiffs' request to opt-out from a Rule 23(b)(2) class action in which both injunctive and monetary relief was sought).[12]

**10.** The cases Pate cites in support of the proposition that he was entitled to actual notice under the Due Process Clause of the United States Constitution do not address (b)(2) class actions. Pl.'s Opp'n at 5 (citing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) and *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). The Court in *Phillips Petroleum* stated: "Our holding today is limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments. We intimate no view concerning other types of class actions, such as those seeking equitable relief." 472 U.S. at 812 n. 3, 105 S.Ct. 2965. Likewise, the Court in *Eisen* stated:

We are concerned here only with the notice requirements of subdivision (c)(2), which are applicable to class actions maintained under subdivision (b)(3). By its terms subdivision (c)(2) is inapplicable to class actions for injunctive or declaratory relief maintained under subdivision (b)(2). The petitioner's effort to qualify his suit as a class action under subdivisions (b)(1) and (b)(2) was rejected by the Court of Appeals. 417 U.S. at 177 n. 14. Pate is correct in stating that actual notice in accordance with

Federal Rule 23(c)(2) is required in (b)(3) class actions, but *Long* was classified as a(b)(2) action, not a(b)(3) action. Therefore, the cases that Pate cites to support his notice position are inapplicable here.

**11.** While a plaintiff may be granted the ability to opt-out of a class certified under Rule 23(b)(2) in order to pursue monetary relief, it stands to reason that a plaintiff must affirmatively request exclusion from the class and demonstrate that "basic fairness" requires the exclusion or the plaintiff will be deemed included within the certified class. *Eubanks,* 110 F.3d at 98. Granting an opt-out request is at the discretion of the trial judge. *Id.* at 94, 98. The District of Columbia Circuit has never addressed whether opt-out rights under Rule (b)(2) are ever required by due process. *Id.* at 92, 97 n. 16. However, other circuits have held that opt-out rights are not necessary for (b)(1) and (b)(2) class certifications in order to comport with due process. *Id.* at 92 (citing cases from the Second, Fifth, Sixth, and Ninth Circuits).

**12.** Although the Court in *Eubanks* stated that class members of a Rule 23(b)(2) class may be permitted in the trial court's discretion to opt-

On January 3, 2001, the class in *Long* brought suit against the USPC—the same defendant that Pate has brought this action against—requesting class certification under Rule 23(b)(2). [*Long*] Complaint at 1; [*Long*] Motion for Certification as Class Action at 3. The *Long* plaintiffs, "D.C.Code offenders released from custody on parole supervision, commenced th[at] class action lawsuit seeking injunctive relief from certain regulations, practices, and procedures of the [USPC]," *Long v. Gaines*, 167 F.Supp.2d 75, 79 (D.D.C.2001), requested class certification of "approximately 400 people (with approximately 80 new people added each month) in order to challenge [the USPC's] parole revocation procedures which ... [allegedly] den[ied] the [D.C.Code offense parolees] timely, meaningful preliminary interviews and revocation hearings required by clearly-established constitutional law." [*Long*] Motion for Certification as Class Action at 3. Class certification was granted on September 26, 2001, certifying "a class of approximately 400 D.C.Code offenders in order to challenge the Commission's regulations governing parole revocation procedures." *Long*, 167 F.Supp.2d at 75, 83.

When the *Long* complaint and class certification request was filed on January 3, 2001, Pate was being detained pursuant to the USPC's authorization awaiting a determination of whether his parole should be revoked. Pl.'s Opp'n at 3. Pate had been in custody for five months at that time and would remain in custody for an additional six months. Pl.'s Opp'n at 3. However, Pate was no longer being detained by the USPC when the class in *Long* was certified, but that did not result in his exclusion as a class member of the Rule 23(b)(2) class. The class certified in *Long* was an evolving class comprised of individuals un-

der parole supervision for the commission of the D.C.Code offenses at the time of certification, *Long*, 167 F.Supp.2d at 79, which sued on behalf of "approximately 400 persons [being detained] for alleged parole violations" as of "the end of December 2000," as well as the alleged "80 additional people per month" that the plaintiffs believed would be added to the class as a result of being detained after being charged with parole violations, [*Long*] Compl. at ¶ 23. The definition of the class adopted by the *Long* Court did not distinguish between parolees detained and not detained by the USPC when the class was certified, as the Court identified the plaintiffs as "a class of D.C.Code offenders released on supervision." *Long*, 167 F. Supp 2d at 79. And presumably the class members in *Long* were detained and pending parole revocation proceedings at the time class certification was sought, although inclusion in the class could occur thereafter if a parolee was detained for a parol violation after the request for certification was made.

Under certain circumstances, the Supreme Court has stated that representative plaintiffs may continue to litigate in their representative capacities in class actions even though their status has changed, removing those persons from the definition of the class. *County of Riverside v. McLaughlin*, 500 U.S. 44, 52, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In *McLaughlin*, the plaintiff class was made up of "persons arrested without a warrant [awaiting] a judicial determination of probable cause within 36 hours of arrest." *Id.* at 49, 111 S.Ct. 1661. The Court rejected the government's argument that the representative plaintiffs' claims could not go forth as part of the class after the plaintiffs either received probable cause hear-

out when both injunctive and monetary relief is sought, that was not the situation in *Long*

where only injunctive relief was sought. 110 F.3d at 94–96.

ings or had been released from custody, and "[the plaintiffs could] not show that they are likely to be subjected again to the unconstitutional conduct." *Id.* at 51, 111 S.Ct. 1661. The Court noted that "[i]n factually similar cases we have held that 'the termination of a class representative's claim does not moot the claims of the unnamed members of the class.'" *Id.* at 51–52, 111 S.Ct. 1661 (citing *Gerstein v. Pugh*, 420 U.S. 103, 110–11 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Schall v. Martin*, 467 U.S. 253, 256 n. 3, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984)). Thus, the Court also concluded "[t]hat [although] the class was not certified until after the named plaintiffs' claims had become moot [that did] not deprive [it] of jurisdiction." *Id.* at 52. The Court rationalized that "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on the motion for class certification before the proposed representative's individual interest expires." *Id.* at 52, 111 S.Ct. 1661 (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 399, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). Therefore, the Court held that it was proper to invoke the "'relation back' doctrine . . . to preserve the merits of the case for judicial resolution." *McLaughlin*, 500 U.S. at 52, 111 S.Ct. 1661.

Although this Court's research has failed to unveil any cases that have addressed the continued class status of an unnamed class member whose class claim has become moot, in accordance with *McLaughlin*, this Court concludes that

Pate's status as a class member was not altered by his release from the USPC's custody. This is especially so here because even after his release in July of 2001, Pate retained his parole status and therefore could potentially be effected by the outcome in the *Long* litigation. Def.'s Mem., Ex. A & V at 6. In other words, a parolee who remained under parole supervision throughout the life of the *Long* class action litigation, Pate remained at risk of being subjected to the regulation and practices of the USPC that were under challenge in *Long*.[13] This is therefore not what would conceivably be a more difficult case if when Pate was released he no longer remained under the USPC's parole supervision. Accordingly, he remained a member of the class certified by the Court in *Long* after his release.

Nonetheless, Pate argues that even if he fell within the definition of the plaintiff class in *Long*, applying the doctrine of *res judicata* to this action is improper. Pl.'s Opp'n at 5. Pate takes the position that because he did not receive notice of the *Long* litigation, he was deprived of due process because he could not opt-out from the class to pursue his own litigation or intervene in *Long* to assert his claims for monetary relief. Pl.'s Opp'n at 5.

The District of Columbia Circuit has stated that "'[o]nly when the purposes in providing class members an opportunity to signify whether representation by named plaintiffs is fair and adequate *or to intervene to present additional claims* or to otherwise come into the action to, for ex-

---

**13.** As a criterion for assessing whether class certification was appropriate in *Long*, the Court had to determine that counsel for the proposed class and its named representatives would adequately represent the interests of all members who would compose the class in regards to the injunctive relief that was being sought. *Long*, 167 F.Supp.2d at 84; *see also Larionoff*, 533 F.2d at 1186 n. 44 ("Thus, in suits under subdivisions (b)(1) or (b)(2) [of Rule 23], once the court determines that the members are adequately represented as required by Rule 23(a)(4), it is reasonably certain that the named representatives will protect the absent members and give them the functional equivalent of a day in court."). And it is significant that Pate is not challenging the adequacy of the representation provided to the overall class in *Long*.

ample, submit views as amici curiae, are in need of being served, does due process require the direction of *some sort of notice* to absent members' of a Rule 23(b)(1) class." *Larionoff*, 533 F.2d at 1186 (quoting *Elliott v. Weinberger*, 564 F.2d 1219 (9th Cir.1977)) (emphasis added). While the Court of Appeals referred specifically to (b)(1) claims when making this statement, the Court did so by using language from an earlier Ninth Circuit opinion involving a Rule 23(b)(2) class action, and otherwise suggests in the *Larionoff* opinion that there is no distinction between the notice requirements under subsections (b)(1) and (b)(2). *See* 533 F.2d at 1186 n. 44. Thus, if the *Larionoff* standard of when notice is required is extended to (b)(2) cases, which seems appropriate, it follows that at least "some sort of notice" should have been provided to the plaintiff class in *Long* so that individual members could have had the opportunity to add common law negligence claims to the suit or to opt-out of the class to pursue their claims for monetary relief in a separate action.[14] *Eubanks*, 110 F.3d at 94.

While Pate has not explicitly stated that he would have brought his common law claims to the attention of the class representatives had notice been provided to him, the pursuit of this lawsuit along with his complaint that he never had the opportunity to opt-out of the *Long* class action suit suggests that he would have sought the opportunity to add his common law claim for monetary relief in the *Long* liti-

gation, or, in the alternative, opted-out of the class to independently bring his claims for monetary relief. And in order to pursue either of these ends, Pate needed to receive some form of notice of the *Long* litigation.

■■ "[D]ue process [for Rule 23(b)(2) class members] is satisfied if the procedure adopted 'fairly insures the protection of the interests of absent parties who are to be bound by it.'" *Larionoff*, 533 F.2d at 1186. Although even the most minimal notice of a class action satisfies the notion of "fairness" in (b)(2) cases, when the presence of special circumstances requires prejudgment notice, and the record is devoid of any evidence of notice, the fairness requirement has not been satisfied. *Id.* at 1186–87. So held the Fifth Circuit in a situation where a plaintiff in a separate action sought both redundant equitable relief and new claims for monetary relief against his employer. *Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 433 (5th Cir. 1979); *accord Norris v. Slothouber*, 718 F.2d 1116 (D.C.Cir.1983) (absent more, "[a] suit for damages is not precluded by reason of the plaintiff's membership in a class for which no monetary relief is sought"). In *Johnson*, the Fifth Circuit concluded that even though the plaintiff had been a member of a Rule 23(b)(2) plaintiff class that had settled a class action case against the same employer, and even "[ ]though notice is not necessary to bind absent class members in a 23(b)(2) class action seeking only injunctive and

---

**14.** The *Larionoff* court stated that notice under Rule 23(d)(2) would be adequate to satisfy due process in the limited circumstances when notice must be provided to absent Rule 23(b)(1) and (b)(2) class members. 533 F.2d at 1186. Federal Rule of Civil Procedure 23(d)(2) provides:

In the conduct of actions to which this rule applies, the court *may* make appropriate orders: (2) requiring, for the protection of the members of the class or otherwise for

the fair conduct of the action, that notice be given in such manner as the court may direct to *some* or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action. (emphasis added).

declaratory relief, due process does require notice before the individual monetary claims of absent class members may be barred." 598 F.2d at 433. Here, the Court has not been presented with any evidence that the plaintiff class was provided even constructive notice by either the plaintiffs or the Court of the *Long* litigation that would provide the basis for this Court concluding that Pate's negligence claims for which he is seeking monetary relief are precluded by *res judicata*. Therefore, even though Pate's claims encompass essentially the same facts that underlay the *Long* class action litigation, absent a showing of even minimal notice, which would be necessary to invoke application of the *res judicata* bar to Pate's tort claims for which he is seeking monetary relief, precludes the Court from granting summary judgment to the United States on Pate's common law tort claims based on its *res judicata* argument.

### 2. Whether the Federal Tort Claims Act Bars the Plaintiff's Common Law Claims?

The United States argues that it is immune from suit on the common law claims the plaintiff has asserted against it pursuant to the FTCA, 28 U.S.C. § 2680(h). Def.'s Mot. at 2. This section states that the United States has sovereign immunity against claims of, among others, "false imprisonment, false arrest, malicious prosecution, [and] abuse of process." 28 U.S.C. § 2680(h). The United States contends that although the plaintiff has asserted negligence claims against it, the actual nature of a claim depends on "the substance of the claim asserted" and not "the particular theory on which the plaintiff has elected to proceed," and therefore "[t]he alleged injury being a depravation of [Pate's] liberty, [Pate's] claims, though denominated as 'negligence' and 'gross negligence' claims, obviously fall within the rubric of false imprisonment claims." Def.'s

Mem. at 11. Pate responds that this Court has subject matter jurisdiction over this matter because as negligence claims they are not barred by sovereign immunity. Pl.'s Opp'n at 5. Pate states that the United States has attempted to erroneously recharacterize his claims in order to fit them within the types of claims that cannot be pursued under the FTCA. *Id.* Moreover, Pate adds that the United States' alleged conduct does not even fall under the FTCA exception concerning matters of discretion. *Id.* at 10–11.

■ The FTCA states that

the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Exempted from this grant of jurisdiction are claims against the federal government for "false imprisonment, false arrest, malicious prosecution, [and] abuse of process." 28 U.S.C. § 2680(h). The United States alleges that Pate has mischaracterized his intentional tort claims as negligence claims in order to remove the claims from this FTCA's exception. Def.'s Mem. at 10–11. The defendants are correct that if the plaintiff's claims fall within one of those exemptions enumerated in the FTCA, this Court is without jurisdiction to adjudicate such claims. *See Cope v. Scott*, 45 F.3d 445, 449 (D.C.Cir.1995). However, Pate seemingly has pled facts sufficient to support his claim that the United States "has a duty to finance, supervise and train the [USPC]

and its administrate staff," ensuring that their employees performed their duty of "conduct[ing] timely parole revocation hearings and mak[ing] specific findings based on evidence presented." Pl.'s Compl. at 8. And the alleged failure of the United States' employees to carry out their functions would seem to subject their employer to negligence liability, absent any bar otherwise preventing the plaintiff from bringing such a claim. That the USPC's alleged negligence caused Pate injury due to the length of his detention, an injury that could also have formed the basis for bringing an intentional tort claim if not for the FTCA, does not change the character of Pate's claims.

In *Sheridan v. United States*, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), the government advanced a similar argument in response to a negligence claim brought by the victim of an alleged assault by an off-duty serviceman near a military hospital. *Id.* at 393–94, 108 S.Ct. 2449. The government argued that the plaintiffs had characterized their intentional assault claim as a negligence claim in order to avoid the sovereign immunity bar of the FTCA and for that reason the judiciary had no jurisdiction to entertain the claim. *Id.* at 398–403, 108 S.Ct. 2449. The Supreme Court explained why the courts had jurisdiction, stating:

> As alleged in this case ... the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of [the alleged assailant's] employment status.... In a case of this kind, the fact that [the alleged assailant's] behavior is characterized as an intentional [act] rather than a negligent act is ... quite irrelevant. If the Government has a duty to prevent a foreseeabl[e] danger[ ] ... it would be odd

to assume that Congress intended a breach of that duty to give rise to liability when the dangerous ... instrument is merely negligent but not when not when [it] was malicious.

*Id.* at 401, 403, 108 S.Ct. 2449 (footnote omitted). The Court identified the source of the government's obligation to protect the alleged victims as a regulatory duty arising from its "voluntarily adopt[ion][of] regulations that prohibited the possession of firearms on [the military facility where the assailant was employed] and that required all personnel to report the presence of any such firearms and by [other servicemen] voluntarily undertaking to provide care to [the assailant] who was visibly drunk and visibly armed ..." *Id.* at 401, 108 S.Ct. 2449. Thus, the Court found that government liability for negligence could be found based on the anti-firearms regulation, coupled with the servicemen who attempted to aid the assailant not attempting to prohibit his departure from the facility and not notifying the authorities of his departure. *Id.* at 395, 401–02, 108 S.Ct. 2449.

As in *Sheridan*, the USPC was under the regulatory requirements of 28 C.F.R. § 2.101 *et seq.* to ensure that parole revocation hearings were conducted in a timely manner.[15] Also, as in *Sheridan*, it is not the actual unlawful detention by the USPC that Pate challenges, but the failure of the USPC to abide by its own regulations and provide Pate with a timely decision regarding his parole status, which would have prevented the harm (his extended detention) for which he seeks monetary damages in this action. The reasoning of *Sheridan* therefore supports the plaintiff's ability to pursue his negligence claims against the United States.

However, regardless of whether Pate has properly characterized his claims and

---

**15.** *See* footnote 8, *supra.*

therefore can bring those claims pursuant to the FTCA, the basis upon which his negligence claims rest presents an impregnable barrier. In Count II of his complaint, Pate specifically alleges that his negligence and gross negligence claims are against the United States for its "actions and inactions both directly and through failure to supervise and enforce policies and procedures." Pl.'s Compl. ¶ 35. Simply stated, Pate is suing the United States for failing to adhere to its own rules, rules which entitled him to a timely revocation hearing and decision. However, the FTCA makes it clear that a tort claim cannot be sustained against the United States where there is not an analogous claim available against a private person under the state law of the jurisdiction whether the event or omission occurred. 28 U.S.C. § 1346(b); *see Tri–State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C.Cir.2003). The Fifth Circuit has elaborated on this jurisdictional prerequisite in a context analogous to circumstances in this case. The Court explained

the Tort Claims Act[, which creates] a civil action against the United States for injury ... caused by the negligent or wrongful act or omission of any employee of the Government under circumstances where the United States, "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred[,]" *simply cannot apply where*

*the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs*. This is so because it is impossible to equate the relationship of the parties in such a situation to any state law relationship where the person sought to be bound is a "private person" who "would be liable to the claimant in accordance with the law" of the state. [A claim that] ... depends entirely upon [a] Federal statute .... [allows] no possibility of such a situation being construed by state law, [and] the attempt to vindicate such right, it seems clear, cannot bring it within the ambit of the tort claims law language which says in effect that the United States may be sued for certain negligent conduct if such negligent conduct perpetrated by a private person would give rise to the claimant under state law.

*United States v. Smith*, 324 F.2d 622, 624–25 (5th Cir.1963) (emphasis added); *see also Hardaway Co. v. United States Army Corps of Eng'rs*, 980 F.2d 1415, 1417 (11th Cir.1993); *Klett v. Pim*, 965 F.2d 587, 589 (8th Cir.1992). Applying this reasoning to the facts before the Court in this case,[16] Pate does not have an actionable claim under the FTCA because a private person could not be sued under District of Columbia law for failing to adhere to a legal requirement imposed on a federal agency, here the requirement that parolees receive timely parole revocation decisions.[17]

**16.** The Court concludes that the *Smith* reasoning is applicable here even though *Smith* involved a statute, whereas an agency regulation is involved. *Chrysler Corp. v. Brown*, 441 U.S. 281, 295, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (substantive agency regulations have the "force and effect of law"); *Sea–Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 645 (D.C.Cir.1998).

**17.** Had Pate properly pled a constitutional claim against the United States the same limits imposed by the FTCA would not apply.

Bringing a constitutional claim for money damages against parole officials is an alternative means of seeking recourse even where an action can be maintained pursuant to the FTCA. *Carlson v. Green*, 446 U.S. 14, 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). Thus, at times, the constitutional approach may even provide a better alternative. *Id.* at 20–23, 100 S.Ct. 1468. For example, although the plaintiff requested a jury trial in this case, the United States Code forbids jury trials on claims brought under the provisions of § 1346 of the FTCA, other than claims brought

Therefore, even assuming that Pate has properly pled negligence claims against the United States in his complaint, he cannot maintain these claims based on the facts that underlie his theory for holding the United States liable.[18]

## III. CONCLUSION

The Court concludes that although the plaintiff's common law tort claims are not barred by *res judicata,* the United States is nonetheless entitled to summary judgment because the negligence claims asserted against it are based on a tort theory not actionable against private persons under the law of the District of Columbia and therefore are not actionable against the United States pursuant to the FTCA. Accordingly, for the reasons stated above, the defendant's motion for summary judgment is granted.

**SO ORDERED** on this 6th day of August, 2004.[19]

under (a)(1), which is not applicable here. 28 U.S.C. § 2402. On the other hand, actions based on alleged constitutional violations are entitled to resolution by a jury. *Carlson,* 446 U.S. at 22, 100 S.Ct. 1468.

18. As a result of its conclusion that Pate's claims based on theories of negligence cannot go forward under the FTCA for the reasons

stated, the Court does not address the United States' additional assertion that it acted in accordance with the federal regulations governing the USPC, therefore entitling it to summary judgment for this reason.

19. An Order consistent with this Memorandum Opinion was issued on July 30, 2004.